UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ORA MILSAP, | ) | |
| | ) | |
| PLAINTIFF, | ) | No. 15 C 630 |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| CHICAGO HOUSING AUTHORITY, | ) | |
| THE HABITAT COMPANY, AND CHICAGO | ) | |
| POLICE DETECTIVE ANTHONY R. LOPEZ, | ) | |
| OFFICER MICHELE D. MCMAHON, AND | ) | |
| SERGEANT TYRONE PENDARVIS, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ora Milsap filed a *pro se* complaint on January 22, 2015. The complaint named the Chicago Housing Authority and Habitat Company as defendants. Upon preliminary review, the Court dismissed the complaint without prejudice for failure to state a claim. In the order of dismissal, the Court noted, "If Plaintiff can competently allege a violation of her civil rights based on a false arrest, she must sue the police officers that arrested her; of if unable to name the individual officers, sue them as John Doe(s) and sue the Superintendent of Police in his representative capacity to provide a mechanism to learn the officers' names." R. 6 at 1. Plaintiff did not file an amended complaint by the Court-ordered deadline, and judgment was entered against her on March 6, 2015. R. 7. On March 23, 2015, Plaintiff moved to reopen the case, claiming she did not receive the dismissal order until March 21, 2015, when she received a copy of that order along with the order

dismissing the case. R. 8. The Court granted Plaintiff's motion. R. 9. An amended complaint was filed on June 9, 2015, R. 17, along with a motion for attorney representation, R. 15, which was granted, R. 18. On August 24, 2015, the now-operative Second Amended Complaint was filed with the assistance of counsel. R. 24. The Second Amended Complaint names as defendants CHA, Habitat and three members of the Chicago Police Department–Officer Michele D. McMahon, Detective Anthony R. Lopez, and Sergeant Tyrone Pendarvis. It asserts claims for First Amendment Retaliation (Count I) and False Arrest (Count II). The Court considers every claim set forth in the Second Amended Complaint to relate back to the filing of the original complaint on January 22, 2015 under Rule 15(c) of the Federal Rules of Civil Procedure.

All of the Defendants move to dismiss. R. 41 (CHA), R. 53 (Habitat), R. 55 (CPD). For the reasons that follow, their motions are granted.

**Background**

Taking the facts of the Second Amended Complaint in the light most favorable to Plaintiff, *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013), the allegations are as follows. Plaintiff was unlawfully retaliated against by CHA and Habitat for tenant organizing, a form of speech she contends is protected by the First Amendment. R. 24 ¶¶ 9-10. In particular, Plaintiff sets forth a number of specific instances of retaliation, including (1) excessive inspections of her apartment, many of which were unannounced; (2) last minute cancelations by CHA or Habitat of planned tenant meetings; (3) unreasonable restrictions on Plaintiff's

use of common spaces for tenant meetings; (4) unfounded warning letters sent to Plaintiff by CHA and Habitat threatening termination of Plaintiff's lease; (5) wrongful institution of eviction proceedings; and (6) retaliatory termination of Plaintiff's lease agreement based on manufactured and pretextual violations of the terms of Plaintiff's tenancy. *Id.* ¶ 11. Plaintiff also alleges that these actions are indicative of a widespread practice that constitutes a custom or usage with force of law, which was tolerated by the CHA Board of Commissioners. *Id.*

Plaintiff also asserts a false arrest claim against the CPD defendants. Specifically, she alleges that on March 21, 2013, she was arrested without cause when two tenants who had obtained mutual no contact orders against her complained to police without basis that she had violated those no contact orders. *Id.* ¶¶ 29-32. Plaintiff alleges that she was not immediately informed of the reason for the arrest and notes that she was never prosecuted in connection with the arrest. *Id.* ¶ 33.

**Discussion**

A.  First Amendment Retaliation (Count I)

CHA and Habitat both argue that this Court lacks jurisdiction over Plaintiff's retaliation claims under the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine prohibits federal district courts from reviewing state court civil judgments, including all claims that are inextricably intertwined with those judgments. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983)*; Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923). Courts are to construe the *Rooker–Feldman*

doctrine narrowly, applying it only in "'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Smith v. Hous. Auth. of S. Bend,* 867 F. Supp. 2d 1004, 1011 (N.D. Ind. 2012) (quoting *Kelley v. Med–1 Solutions, LLC,* 548 F.3d 600, 603 (7th Cir.2008)) (holding that civil rights claims against a public housing authority were not inextricably intertwined with a state court eviction order so as to be barred by *Rooker-Feldman*). Moreover, "the Supreme Court has warned not to confuse *Rooker–Feldman* with claim preclusion: 'If a federal plaintiff present[s] some independent claim that denies a legal conclusion that a state court has reached in a case to which he was a part . . ., then there is jurisdiction, and state law determines whether the defendant prevails under principles of preclusion." *Sykes v. Cook Cty. Circuit Court Prob. Div.,* 837 F.3d 736, 742 (7th Cir. 2016) (internal punctuation omitted) (quoting *Exxon–Mobil v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, (2005)).

The Court finds *Rooker-Feldman* inapplicable here for three reasons. First, Plaintiff alleges that her injuries are emotional and physical, caused by the retaliatory conduct of CHA and Habitat and not by any error in the state court proceedings or judgment. Second, while Plaintiff alleges that she has been unable to obtain an apartment and has been homeless since her eviction, she does not request a review by this Court of the state court eviction order or reinstatement in the housing complex she was evicted from. Third, the Court need not review the

eviction determination to discuss the merits of Plaintiff's constitutional claim. And if the Court were to find that CHA and Habitat evicted Plaintiff in retaliation for her constitutionally protected activities, that finding, though contrary to a legal premise of the eviction order, would not disturb the order itself. The Court thus concludes that it has jurisdiction over Plaintiff's First Amendment retaliation claim.

Unfortunately for Plaintiff, her claim is nevertheless barred. "In Illinois, *res judicata* extends to all questions actually decided in a previous action as well as to all grounds of recovery and defenses which might have been presented in the prior litigation." *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 956 (7th Cir. 1997) (citing *La Salle Nat'l Bank v. Cnty. Bd. of Sch. Trustees*, 337 N.E.2d 19, 22 (Ill. 1975)). *Res judicata* bars a subsequent action if three requirements are met: "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there is an identity of cause of action; and (3) there is an identity of parties or their privies." *Id.* Plaintiff does not argue that any of these three requirements are not met. Rather, she argues she lacked a reasonable opportunity to raise her retaliation claim in state court because it seeks monetary damages and therefore was not germane to the eviction proceedings. R. 56 at 13. But the authority she cites establishes that the opposite is true. In *American National Bank by Metroplex, Inc. v. Powell*, 691 N.E.2d 1162, 1170 (Ill. App. Ct. 1997), an Illinois appellate court explained that under Illinois law and municipal ordinances, a tenant is permitted not only to raise retaliation as a defense to eviction, but furthermore to pursue damages for a landlord's retaliatory conduct. Because the state court eviction order

5

is final, because there is an identity of action and parties between the state court proceedings and this suit, and because Plaintiff could have asserted her retaliation claim in the earlier-brought action, it is barred by the doctrine of *res judicata.*

Plaintiff attempts to circumvent the *res judicata* bar by arguing that the her claim as to Defendants' pre-eviction retaliatory conduct—e.g., unannounced inspections, unreasonable restrictions on use of common space for tenant meetings, etc.—stands apart from the retaliatory eviction itself and therefore is not precluded. Of course, her cause of action on those claims, if considered apart from the eviction itself, accrued, at the latest, in October 2012, when Plaintiff decreased her involvement in tenant organizing for fear of further retaliation. To avoid a claim-dispositive statute of limitations defense, Plaintiff asks the Court to consider the pre-eviction retaliation as a continuous course of conduct culminating in the eviction itself. Doing so would extend the start of the limitations period to March of 2013, making Plaintiff's claim here timely. But Plaintiff cannot have it both ways. If the retaliation formed a single-course of conduct, she was required to raise it (both defensively and affirmatively) in state court eviction proceedings. If the pre-eviction retaliation was a discrete course of conduct, the statute of limitations on that conduct expired in October 2014, three months before Plaintiff filed suit.

The Court recognizes that Plaintiff was not represented in state court eviction proceedings and that she may not have articulated her First Amendment retaliation claims with the clarity and thoroughness with which they are set forth

here. Unfortunately, because the claims could have been raised, and because they are now time-barred, this Court cannot consider their merits.

B. False Arrest (Count II)

Plaintiff's false arrest claims against the police officers are dismissed. Simply, there was probable cause for Plaintiff's arrest. *See Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2011) (holding that probable cause is an absolute defense to a false arrest claim). "Police officers possess probable cause to arrest when the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed an offense." *Id.* at 398 (internal quotations and citations omitted). The Court does not evaluate probable cause based upon "the facts as an omniscient observer would perceive them," but instead considers the facts "as they would have appeared to a reasonable person in the position of the arresting officer." *Id.* (internal quotations and citations omitted). "Probable cause is assessed objectively: a court looks at the conclusions that the arresting officer reasonably might have drawn from the information known to him rather than his subjective reasons for making the arrest." *Holmes v. Village of Hoffman Estates*, 511 F.3d 673 (7th Cir. 2007).

"Police are entitled to base an arrest on a citizen complaint . . . without investigating the truthfulness of the complaint, unless . . . they have reason to believe it's fishy." *Guzell v. Hiller*, 223 F. 3d 518, 520 (7th Cir. 2000). Thus, "[s]o long as an officer reasonably believes the putative victim or eyewitness to a crime is

telling the truth, he may rely on the information provided to him by such person in deciding to make an arrest." *Williamson v. Curran*, 714 F.3d 432, 441 (7th Cir. 2013). Two complainants told officers that Plaintiff violated orders of protection they held against her. Their stories were mutually corroborating, and the fact that orders of protection had been entered in the first place leant credibility to their claims. Plaintiff argues that the officers should have been skeptical of the complaining witnesses' reports given their "history of confrontation" with Plaintiff. To the contrary, the parties' combative history supported the reasonableness of the officers' belief that an offense was committed.

Plaintiff also argues that there was no probable cause to arrest her because she could account for her whereabouts at the time the witnesses claim she violated the no contact order. However, in determining probable cause, "[i]t does not matter . . . whether the accused person denies the allegations," as long as "allegations by eyewitnesses . . . if true, show that a crime has occurred." *Askew v. City of Chicago*, 440 F.3d 894, 895 (7th Cir. 2006). The Court finds that probable cause existed for Plaintiff's arrest.

Even if the defendant officers lacked probable cause to arrest Plaintiff, the claim against them still fails because the officers were protected by qualified immunity. Qualified immunity "protects public servants from liability for reasonable mistakes made while performing their public duties." *Findlay v. Lendermon*, 722 F. 3d 895, 899 (7th Cir. 2013). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*,

8

136 S. Ct. 305, 308 (2015). At a minimum, the responding officers reasonably believed they had probable cause to arrest Plaintiff because two witnesses with orders of protection against Plaintiff reported objectively credible and mutually corroborating violations of those orders. The conduct of the arresting officers is thus immune from suit. The CPD Defendants' motion is therefore granted.

## Conclusion

Defendants' motions to dismiss [41] [53] [55] are therefore granted. The Second Amended Complaint is dismissed without prejudice. Though the Court strongly doubts that the deficiencies identified in this Order can be cured, it grants Plaintiff leave to file a motion to amend the complaint by January 6, 2017. The motion should attach a proposed amended complaint and a brief of no more than five pages explaining how the proposed amendments cure the deficiencies in the current complaint. Defendants should not file a brief responding to Plaintiff's motion to amend (should she choose to file one) unless the Court requests a response. If Plaintiff does not file a motion to amend by January 6, 2017, her case will be dismissed with prejudice.

ENTERED:

_Thomas M Durkin_
Honorable Thomas M. Durkin
United States District Judge

Dated: November 29, 2016

9